JACOB PAULEY, AS ADMINISTRATOR OF, ETC., OF FRANK ALBERT PAULEY, DECEASED, PLAINTIFF, *v.* STEAM GAUGE AND LANTERN COMPANY, DEFENDANT.

*Fire-escapes in factories — duties of the owners — presumption as to the cause of an employee's death — contributory negligence.*

The statute relating to placing fire-escapes upon factories (§ 10 of chap. 409, Laws of 1886, as amended by chapter 462, Laws of 1887) imposes a duty upon the owners of a factory to provide for its employees convenient and proper fire-escapes, conveniently and properly located, with unobstructed passage thereto. Their number depends upon the size of the factory, the number of employees and the inflammable character of the materials used.

In an action brought to recover for the death of an employee, in which it was charged that the statute relating to fire-escapes had been violated, it appeared that there were in the factory in question but two fire-escapes, one of which was, because of intervening iron shutters, practically useless, and the access to the other of which was not free; that at the lowest extremity of the latter there was a shute used for sliding goods into a sub-cellar; that the deceased, a boy of

fifteen, was familiar with the premises; that his body was found, with other bodies, in the sub-cellar near the lowest end of the shute. There was no proof of the precise manner in which he came to his death.

*Held,* that it was a question for the jury whether the corporation was not negligent in failing to provide proper fire-escapes, and whether such death had not resulted therefrom.

That the question of the contributory negligence of the deceased was also one for the jury.

That it was a question of fact for the jury whether his failure to escape resulted from lack of effort or from lack of means of escape.

MOTION by the plaintiff Jacob Pauley, as administrator, etc., of Frank Albert Pauley, deceased, for a new trial ordered to be heard in the first instance at General Term, after a motion for a nonsuit, granted January, 1890, upon a trial at the Monroe Circuit before the court and a jury, where a judgment of nonsuit was ordered.

*J. & Q. Van Voorhis,* for the plaintiff.

*Louis Marshall,* for the defendant.

LEWIS, J.:

This action was brought to recover damages for the death of Frank A. Pauley, alleged to have been caused by defendant's negligence. The case was tried at the Monroe Circuit, in January, 1890, and at the conclusion of plaintiff's evidence a nonsuit was granted.

The defendant was an incorporated company engaged in the manufacture of lanterns in the city of Rochester, and on the evening of November 9, 1889, its factory was destroyed by fire and some thirty or more of the employees were killed. Frank A. Pauley was an employee in the factory, and was one of the victims. He was, at the time of his death, between fourteen and fifteen years of age. The factory building was seven stories high, including a basement and sub-basement. The basement was the floor immediately below the level of the ground, and the sub-basement was the floor below that. There were two buildings connected; one called the main building, the other the wing. The main building was located on the river. The wing building was over one hundred feet in length. South of and connected with the main building was the shoe factory of Hoyt & Williams, which formed, with the

main part of the defendant's factory, one solid building, Hoyt & Williams' building being one story higher than the defendant's main building.

Connected with the southerly side of the wing of defendant's factory was a building occupied as a box factory, which was two stories lower than the wing, and between the building occupied by Hoyt & Williams and the box factory was a court from thirty to forty-five feet wide, extending from a street northerly between said buildings. There were flights of *stairs* in defendant's main building, one near the south-end and the other in the wing; the latter being located a little to the west of a door leading into the wing from the court. About ten feet east of the wing door was an elevator used for carrying freight. The shaft of this elevator was built against the south wall of the wing, on the outside so that it projected southerly into the court six or seven feet. On the east side of this shaft was a fire-escape, consisting of a ladder of iron staples fastened into the side of the shaft. The lowest staple or rung being about fifteen feet above the surface of the court. There was an area at the north end of the court extending from this elevator shaft to the east side of the court, which was as deep as the sub-basement. In this area, and next to the elevator shaft, and substantially under this fire-escape or ladder, a shute or slide had been constructed for the purpose of sliding boxes into the sub-basement from the court. A person dropping from the ladder was liable to fall into the shute. There was another fire-escape consisting of a ladder attached to the southerly side of the main building, and on the east side of the court between two rows of windows. These windows had iron blinds, which were so constructed as to practically prevent the use of the last mentioned fire-escape. There was no ladder leading from the top story of the building to the roof. There was a passenger elevator on the west side of the main building near the south end.

The work of the fire was very rapid, and the well of the passenger elevator acted as a flue to carry the fire to the upper stories. There was a quantity of benzine, turpentine, varnish, paints, oils and other inflammable materials, including some hay, stored in different parts of the building. The deceased worked on the fifth floor at the southerly end of the main building, and in the vicinity of the fire-escape

last described. There were about sixty men and boys at work upon the fifth floor on the night of the fire. There was proof in the case tending to show that Pauley was at work upon the fifth floor of the factory at the time the fire occurred, but none of the witnesses called testified to having seen him after the fire broke out.

His body was found in the sub-basement in the vicinity of the foot of the shute above described. When the fire broke out the employees in the fifth story attempted to escape from the building by going down the stairway, but the smoke and fire prevented, and they then rushed for the fire-escape attached to the wing-elevator shaft. In getting to that escape they were obliged to pass through a window, and the way thereto was somewhat obstructed by a bench and other objects. A large number of persons in attempting to use this escape obstructed each other, and many of them became panic stricken, caught hold of each other and were lying in a mass upon the floor holding each other and calling for help. A considerable number succeeded in leaving the building by this fire-escape, but in doing so were seriously burned by fire coming from the windows and in dropping from the lower rung of the escape. Several were precipitated into the shute mentioned as being under the escape, falling into the basement of the building and receiving quite serious injuries in coming in contact with the shute, but succeeded in escaping. One person, and one person only, succeeded in getting out of the building by way of the escape attached to the main building. His access to the escape was rendered very difficult by reason of the blinds obstructing his way. He was not able to explain how he reached the escape. He testified that, after the fire, he made the attempt to get to this fire-escape, but was not able to do so in consequence of the shutters obstructing his way. Evidence tended to show that it was practically useless. There was evidence that a person on the roof of the building could probably have escaped through a door leading from the roof into the highest story in the north end of the Hoyt & Williams building, or by dropping from the roof of the wing onto the roof of the box factory, a distance of two stories.

Section 10 of chapter 409 of the Laws of 1886, as amended by chapter 462 of the Laws of 1887, provides that "fire-escapes shall

be provided on the outside of all factories three or more stories in height, connecting with each floor above the first, well fastened and secured, and of sufficient strength. Stationary stairs or ladders shall be provided on the inside from the upper story to the roof as a means of escape in case of fire."

The defendant owed a duty to its employees to comply with this statute, and provide for them convenient and proper fire-escapes, conveniently and properly located, with free and unobstructed passage thereto. While the statutes do not specify the number of fire-escapes, the number required depends upon the size of the factory, the number of employees and the inflammable character of the materials in the factory.

The history of this fire tends to show that one escape was not adequate. Pauley's body was found in the sub-basement lying upon and covered with the debris of the building, near the foot of the shute and several feet distant from a number of bodies which were lying together in the sub-basement of the wing.

While the proof failed to show, very satisfactorily, precisely how Pauley came to his death, the place where his body was found, its position in reference to the debris, and its position in reference to the shute, tended to show that he attempted to leave the building by the fire-escape and fell into the shute.

We are left, as was stated in *Willy* v. *Mulledy* (78 N. Y., 315), to the necessity of weighing probabilities. We may assume that Pauley was familiar with the fire-escapes; that he knew of the obstructions to the use of the one attached to the main building.

We think there was evidence in this case which should have been submitted to the jury, whether the defendant was not guilty of negligence in failing to provide proper escapes from the building.

When a duty is imposed by statute upon an employer, the law gives to a person having a special interest in its performance a cause of action for a breach thereof, causing him damages. (*Willy* v. *Mulledy, supra,* and cases therein referred to.)

Had both fire-escapes and a ladder to the roof been in a condition to be used, the panic among the operatives would very likely not have occurred, and they might have succeeded in escaping from the building.

The case of *Schwandner* v. *Birge* (33 Hun, 186), is, in its facts,

very similar to the case at bar. Schwandner was a lad nineteen years of age, working in a wall-paper factory in the city of Buffalo, and came to his death by the burning of the factory.

The alleged negligence of the defendant consisted in not providing proper means of escape from the fifth story of the factory, and particularly in not furnishing a staircase or ladder or other means of access to the scuttle in the roof. The evidence in that case failed to show the circumstances under which Schwandner was killed. It was not shown that he would have escaped by the use of a ladder to the roof had one been provided.

The plaintiff was nonsuited at the circuit, and the General Term of this department set aside the nonsuit, holding that it was a question for the jury whether his failure to escape was not due to the lack of means of escape rather than to a lack of effort on the part of the deceased.

It was a question for the jury whether Pauley was himself free from negligence contributing to his death. He was a lad between fourteen and fifteen years of age, was undoubtedly familiar with the premises and the means of escape, and the jury had the right to infer that he made efforts to escape, but failed in so doing because of the inadequacy of the fire-escapes. He undoubtedly knew of the escape attached to the main building near where he worked, but may not have known the fact that the iron shutters prevented its being used.

The plaintiff's complaint stated that Pauley, in attempting to descend the fire-escape attached to the wing elevator, fell into the shute, which caused his death.

The defendant claims that there was no proof warranting the jury in finding that his death was caused in that manner, and that, therefore, the nonsuit was proper. We think there was evidence tending to show that he met his death in that way. There was a general allegation in the complaint that his death was caused by the negligence of the defendant, and without any fault or negligence of the deceased. If necessary, the complaint could have been amended to conform to the facts proven. The plaintiff was not confined upon the trial to proof that the deceased was killed by falling into the shute. He was allowed to prove all the facts, and we do not think there was such a variance between the pleadings and

the proof as to mislead the defendant to its prejudice in maintaining its defense upon the merits.

The nonsuit should be set aside and a new trial granted, with costs to abide the event.

DWIGHT, P. J., and MACOMBER, J., concurred.

Plaintiff's motion for a new trial granted, with costs to abide the event.